IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TRAVELERS CASUALTY
INSURANCE COMPANY OF AMERICA,

     Plaintiff,

     v.                         No. 1:21-cv-357

ALBUQUERQUE UROLOGY ASSOCIATES, P.A.,
STEFAN H. GUTOW, M.D., JEROME WAYNE BACA, PA-C,
NATHAN NEAL NASH, MELISSA NASH, MAUREEN SANDERS, ESQ.,
as *Guardian ad Litem* for S.P.N and RAY VARGAS, ESQ., as
*Guardian ad Litem* for S.B.N.

     Defendants.

## COMPLAINT FOR DECLATORY RELIEF

     Plaintiff Travelers Casualty Insurance Company of America ("Travelers") hereby brings this complaint for declaratory relief against Albuquerque Urology Associates, P.A., Stefan H. Gutow, M.D., Jerome Wayne Baca, PA-C (sometimes collectively referred to as ("AUA Defendants"), Nathan Neal, Melissa Nash, Maureen Sanders Esq., as Guardian ad Litem for S.P.N and Ray Vargas, Esq., as Guardian ad Litem for S.B.N (sometimes collectively referred to as "The Nashes"), and alleges as follows:

## THE PARTIES

     1.     Travelers Casualty Insurance Company of America is an insurance company incorporated under the laws of the State of Connecticut and maintains its principal place of business in Hartford, Connecticut.  Travelers does business in the State of New Mexico and has complied with the laws of the State of New Mexico pertaining to corporations engaged in the insurance business.

     2.     Defendant Albuquerque Urology Associates, P.A. is a professional corporation incorporated in the State of New Mexico with a principal place of business in Albuquerque, New Mexico.

3.      Stefan H. Gutow, M.D. is a resident of Albuquerque, New Mexico and is a citizen of the State of New Mexico.

4.      Jerome Wayne Baca, PA-C is a resident of Albuquerque, New Mexico and is a citizen of the State of New Mexico.

5.      Nathan Neal Nash and Melissa Nash Maureen Sanders, Esq. and S.P.N. and Ray Vargas, Esq. and S.B.N. are residents of Albuquerque, New Mexico and citizens of the State of New Mexico.  The Nashes have a claim which may be affected by the requested declaration and are therefore named as defendants in this matter.

## JURISDICTION AND VENUE

6.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

7.      There is complete diversity of citizenship as to all parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

8.      The claims at issue in this action arose in the District of New Mexico and Defendants are citizens of the State of New Mexico.  Venue is, therefore, proper in this Court pursuant to 28 U.S.C. § 1391.

9.      Declaratory relief is requested pursuant to 28 U.S.C. § 2201.

10.     There is an actual justiciable controversy between the parties regarding whether Travelers has any duty to defend and/or indemnify the AUA Defendants under an insurance policy issued by Travelers as set forth in more detail below.  Consequently, this Court is vested with the power to declare and adjudicate the rights and other legal relationships of all parties to the instant litigation with respect to the issues raised by this Complaint.

## GENERAL ALLEGATIONS

*The Insurance Policy*

11.     Travelers issued Policy No. 680-6904N118-16-42 to Named Insured Albuquerque Urology Associates with a Policy Period of July 19, 2016 to July 19, 2017 (the "Policy").

12.     The form of business is identified in the Policy as "Corporation".

13.     A true and correct copy of the Policy is attached hereto as Exhibit A.

2

14.     The Policy provides Commercial General Liability Coverage as follows:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.  Insuring Agreement**

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1)  The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2)  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

b.  This insurance applies to "bodily injury" and "property damage" only if:

(1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)  The "bodily injury" or "property damage" occurs during the policy period; and

* * *

*See* Exhibit A, Policy, CG 00011001 page 1 of 16.

15.     The Policy also contains a Professional Services Exclusion Endorsement, providing:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PROFESSIONAL SERVICES EXCLUSION –
# SERVICES FURNISHED BY HEALTH CARE PROVIDERS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

1. Paragraph **2.a.(1)(d)** of **SECTION II – WHO IS AN INSURED** is deleted.

2. The following exclusion is added to Paragraph **2., Exclusions**, of **SECTION I – COVERAGES – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

**Professional Health Care Services**

"Bodily injury" or "property damage" arising out of providing or failing to provide "professional health care services".

3. The following exclusion is added to Paragraph **2., Exclusions**, of **SECTION I – COVERAGES – COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**:

**Professional Health Care Services**

"Personal injury" or "advertising injury" arising out of providing or failing to provide "professional health care services".

4. The following is added to the **DEFINITIONS** Section:

"Professional health care services" includes:

a. Any medical, surgical, dental, laboratory, x-ray or nursing services, treatment, advice or instruction, or the related furnishing of food or beverages;

b. The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances;

c. The handling or treatment of corpses, including autopsies, organ donations and other postmortem procedures;

d. Any health or therapeutic service, treatment, advice or instruction;

e. Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

f. Any psychiatric, psychological or emotional counseling service, treatment, advice or instruction; and

g. The service by any person as a member of a formal accreditation, standards review, peer review or equivalent professional board or committee or member of any professional organization or committee.

*See* Exhibit A, Policy CG D3340409 Page 1 of 1.

16. The Policy defines who is an insured:

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

\* \* \*

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

\* \* \*

> 2. Each of the following is also an insured:
>
>    a. Your "volunteer workers" only while perform-
>    ing duties related to the conduct of your busi-
>    ness, or your "employees", other than either
>    your "executive officers" (if you are an organi-
>    zation other than a partnership, joint venture
>    or limited liability company) or your managers
>    (if you are a limited liability company), but
>    only for acts within the scope of their em-
>    ployment by you or while performing duties
>    related to the conduct of your business. How-
>    ever, none of these "employees" or "volunteer
>    workers" are insureds for:
>
>    (1) "Bodily injury" or "personal and advertis-
>    ing injury":
>
>    * * *
>
>    (d) Arising out of his or her providing or
>    failing to provide professional health
>    care services.

*See* Exhibit A, Policy, CG 00011001 at page 9 of 16.

***The Underlying State Court Complaint***

17.     On  November 15, 2019, Nathan Neal Nash, Melissa Nash, Maureen Sanders, Esq. as Guardian ad Litem and Ray Vargas, Esq., as Guardian ad Litem for S. B. N. filed suit against various defendants including  Albuquerque Urology Associates, P.A.,  Stefan H. Gutow, M.D. and Jerome Wayne Baca, PA-C in the Second Judicial District Court, County of Bernalillo, State of New Mexico, Cause No. D-202-CV-2019-08912.  ("Underlying Action").  The Complaint was subsequently amended multiple times and a copy of the Second Amended Complaint to Recover Damages For Medical Negligence ("Second Amended Complaint"), which is the operative complaint, is attached hereto as Exhibit B.

18.     The Second Amended Complaint arises out of a medical negligence claim brought against the AUA Defendants among others. As alleged in the Second Amended Complaint, in December of 2016, Nathan Neal Nash was referred to Albuquerque Urology Associates, P.A., where he was seen by Defendant Jerome Baca, PA-C for specialized care and testing.  Defendant Baca was a Physician's Assistant at AUA, under the supervision of Defendant Stefan H. Gutow, M.D.

19.     The Nashes allege that Defendant Baca had requested an out-patient CT Scan of Nathan Nash, and did not consider the Final Report, only consulting the Preliminary Report – which did not identify a lung mass.

20.     As it relates to the AUA Defendants, the Complaint includes allegations that the following negligent acts occurred:

- The lack of a system at AUA to ensure that the reports of studies were read and acted upon by personnel trained and educated about the importance of findings on such reports;

- The practice of non-medical personnel at AUA upon receipt of faxes and conveyance of results to the provider, PA-C relied on the preliminary report and completely failed to convey or act on the findings of likely lung cancer;

- PA-C Baca did not notify the patient, Nathan Nash, of his condition – the presence of a mass on his lung that required further imaging and treatment.  PA-C Baca does not offer Nathan Nash any treatment for the lung mas or did PA-C Baca tell Nathan Nash that a medical provider or doctor with other qualifications than those possessed by PA-C Baca was needed to address the lung mass issues.  Instead, PA-C Baca referred Nathan Nash to Dr. Stefan Gutow, M.D., his supervising physician within the AUA medical practice for cystoscopy – further urologic studies.  PA-C Baca also sent a follow-up letter to CFNP Nipp notifying her of the plan of treatment for Nathan Nash.  In this communication with CFNP Nipp, PA-C Baca makes no mention of the lung mass identified in the Final CT Scan report;

- Despite the fact the preliminary and the Final reports of CT Scan were in the patient's chart, Dr. Gutow also failed to read the Final CT Scan report and relied solely on the preliminary report of the January 26, 2017 CT scan;

- In failing to read the Final CT scan report, PA-C Baca and Stefan Gutow M.D. completely missed the presence of the mass in Nathan Nash's lung lobe and the

need to refer him to other specialist medical providers for further evaluation, care, and treatment.

21.    The Nashes also claim that AUA failed in its duties to maintain Nathan Nash's medical chart in good order, timely posting test results and reports of tests received, and ensuring that findings in the reports of such tests are presented to the health care providers who need such reports to properly care for the patient and failed to have a policy or procedure that protected Nathan Nash from staff and employees who could not discern the difference between a preliminary CT report and a final CT report.  Exhibit B, Complaint, ¶ 95 -97.

22.    The Nashes seek damages from the AUA Defendants relating to the medical care of Nathan Neal Nash and the alleged medical negligence of the AUA Defendants as well as other parties. *See* generally Exhibit B, Complaint.

***AUA Defendants Tender to Travelers***

23.    AUA Defendants provided notice of the Underlying Action to Travelers and demanded defense and indemnity under the Policy.

24.    Because the claims alleged arise out of providing or a failure to provide "professional health care services" as defined in the Policy by AUA Defendants, the claims are excluded from coverage under the Professional Services Exclusion Endorsement.  Nevertheless, Travelers agreed to defend under a reservation of rights and provided notice to AUA Defendants that there was no duty to defend or indemnify AUA Defendants for the claims in the Underlying Action.

## COUNT ONE – DECLARATORY RELIEF

25.    Travelers incorporates the allegations of paragraphs 1 through 24 of the Complaint as though fully set forth herein.

26.    The rights and obligations of Travelers and AUA Defendants are in dispute and affected by the terms and conditions of the Policy at issue and New Mexico case law.

27.    The Nashes are named as interested parties given their claims against the AUA Defendants in the Underlying Action.

28.     Specifically, a controversy between the parties exists regarding whether AUA Defendants are entitled to a defense and/or indemnification for the claims made against them by the Nashes in the Underlying Action.

29.     Travelers does not owe either a defense or indemnification obligation to AUA Defendants because the claims in the Underlying Action involve claims for bodily injury and associated damages arising out of providing or a failure to provide "professional health care services" as defined in the Policy by AUA Defendants, the claims are excluded from coverage under the Professional Services Exclusion Endorsement.

30.     Travelers has no duty to defend AUA Defendants in the Underlying Action because the insurance does not apply to any of the claims alleged in the Underlying Action.

31.     By reason of the foregoing, there now exists an actual justiciable controversy between Travelers and AUA Defendants in the Underlying Action as required by 28 U.S.C. § 2201.  Consequently, this Court is vested with the power to declare and adjudicate the rights and other legal relationships of all parties to the instant litigation with respect to the issues raised by this Complaint.

WHEREFORE, Travelers respectfully requests that this Court declare the rights and obligations of the parties hereto in accordance with Travelers contentions herein; specifically that:

(A) Judgment be entered in Travelers' favor and the Court enter a declaration regarding the rights and obligations of each of the parties with respect to the dispute herein and find that there is no coverage under the Policy for the claims asserted in the Underlying Action;

(B) That it enter judgment declaring that Travelers has no duty to defend or indemnify Albuquerque Urology Associates, P.A., Stefan H. Gutow, M.D., and Jerome Wayne Baca, PA-C for the claims asserted in the Underlying Action; and

(C) That it enter judgment declaring that Travelers may withdraw from the defense it has been providing to the AUA Defendant; and

(D) Awarding Travelers such other relief, including its costs as this Court deems just and

proper.

MODRALL, SPERLING, ROEHL, HARRIS
& SISK, P.A.

By: */s/ Jennifer A. Noya*
  Jennifer A. Noya
  Attorneys for Travelers
  Post Office Box 2168
  Bank of America Centre, Suite 1000
  500 Fourth Street, N.W.
  Albuquerque, New Mexico 87103-2168
  Telephone: (505) 848-1800

Y:\dox\client\82357\0155\DRAFTS\W4045738.DOCX